Hoskins v. O'Brien, 132 Wis. 453.

HOSKINS, Respondent, vs. O'BRIEN, Appellant.

*May 24—June 20, 1907.*

*Brokers: Unauthorized contract for sale of land: Vendee's knowledge of lack of authority: Appeal: Review: Findings: Undisputed facts.*

1. A broker, to whom plaintiff had given written authority to procure a purchaser for her land on certain specified terms or on such terms as she might thereafter accept or declare to be satisfactory to her, reported to her an offer as coming from defendant, and she accepted it, but defendant afterwards repudiated it as unauthorized by him. Defendant then made a different offer, which plaintiff rejected, and she then notified the broker that she would not sell to defendant on any terms. The broker, without further communicating with plaintiff, proceeded to make a contract for the sale of the land to defendant on terms differing from those specified in the written authority and from those which plaintiff had once accepted. *Held*, that such contract was void, especially if defendant knew that it was unauthorized.

2. A finding by the trial court that defendant knew, when he made the contract with the broker, that the latter had been notified of plaintiff's decision not to sell the land to defendant on any

terms, is *held* not to be clearly against the preponderance of the evidence although there was no direct testimony supporting it and the positive testimony of defendant was to the contrary.

3. Undisputed facts appearing in the record should be considered in support of the judgment even though they are not specifically covered by the findings.

Appeal from a judgment of the circuit court for Fond du Lac county: Chester A. Fowler, Circuit Judge. *Affirmed.*

Action to remove a cloud on title.

The issues made by the pleadings involved the question of whether one T. Brennan had authority to contract in plaintiff's name to sell the land described in the complaint to defendant. Such authority was claimed under a writing of which the following is a copy:

## *"Exclusive Sale Contract.*

"I hereby appoint Timothy Brennan my broker to procure a purchaser for the following described property owned by me, to wit:

"Commencing at the southeast corner of Everett and Fourth streets, running west 306.31 feet, thence north 404.97 feet to Third street, thence east 304.50 feet to Everett street, thence along the west line of Everett street 440.52 feet, to place of beginning, in the Tenth ward, city of Fond du Lac, Wisconsin, at the following price and terms: Price of property, ten thousand ($10,000) dollars, three thousand ($3,000) dollars cash, and the balance seven thousand ($7,000) payable on or before five years from date of sale, with interest at five per cent. per annum, secured by mortgage and fire insurance on buildings on the above described property, or at such prices and terms as I may hereafter accept or declare to be satisfactory to me. In the event of the sale or trade of said property, or in the event said broker produces such a purchaser, I agree to pay said broker a commission of two and one-half per cent. on the whole of any such price. When such purchaser is procured, I agree to furnish said broker a correct and complete abstract of title

and give a good warranty deed of said land, or lots, or lands, said Timothy Brennan to have the sole and exclusive sale of said property for a period of six months from date hereof; and his authority to act as broker shall continue after the expiration of said term and until ten (10) days after the service on said broker by me of a written notice terminating this agency.

"Dated at Fond du Lac, Wis., July 18th, 1906.

"Witness: Timothy Brennan.          M. A. HOSKINS."

The issues were closed by the trial court, in effect, in this way:

At the time of the commencement of this action defendant laid claim to plaintiff's real estate described in the complaint under an instrument dated July 28, 1906, signed by him as executory vendee, and plaintiff by T. Brennan, agent, as executory vendor, and recorded in the office of the register of deeds of Fond du Lac county, Wisconsin. July 1, 1906, plaintiff gave Brennan verbal authority to procure a purchaser for the property. During the times material to the case H. R. Potter of Fond du Lac, Wisconsin, to the knowledge of Brennan, was plaintiff's business adviser. July 17, 1906, Potter was requested by Brennan to advise plaintiff to give the latter the exclusive agency for the sale of the property, which he refused to do, saying if she gave any one such authority it would be contrary to his advice. On the following day Brennan, knowing that Potter was where plaintiff could not consult him, represented to her that it was necessary, in order that he might successfully negotiate with one Burke, a prospective purchaser, for him to have exclusive authority to procure a purchaser for the property. He was then informed by plaintiff that she did not wish to sign a writing to that effect except on the advice of Potter, who was away. Brennan then said the necessity for such signing was urgent and if she would sign the paper he had prepared it should be revoked and returned in case of its not meeting with Potter's approval. Under those circumstances

she signed the writing mentioned in the answer. Upon the following day Potter disapproved of her action and was instructed by her to so notify Brennan and obtain a return of the paper. He communicated such disapproval to Brennan, requesting such return, which was refused.

On July 25, 1906, thereafter Brennan informed plaintiff that defendant, *O'Brien,* would take the property at $8,000, $600 to be paid in cash, $900 by a note secured on other property, $1,000 secured by a note on still other property, the balance to be secured upon the property sold, payable on or before five years from date with interest at five per cent. per annum, payable annually, with privilege of paying $100 at any time prior to the maturity of the note to be given. Upon advising with Potter she notified Brennan she would accept the proposition. Thereafter plaintiff, defendant, Potter, and Brennan met in respect to the matter, at which time defendant notified plaintiff that Brennan had exceeded his authority, but offered to take the property as proposed if she would put in some specified personal property. She promised, through her adviser, Potter, to inform Brennan the following day what she would do. Upon the evening of that day and the morning of the following day plaintiff informed Potter she would not accept defendant's proposition or sell the property to him at all, and instructed him to so advise Brennan, which he did before noon of such day. Thereafter Brennan, acting in defendant's interest, and without authority from plaintiff, on said day made the contract with *O'Brien,* pretending to act by plaintiff's authority, *O'Brien* well knowing she had refused to accept from him $8,000 for the property upon any terms. At the time the contract was executed Brennan's authority to negotiate with defendant had ceased. July 30th after the contract was made, defendant, on the advice of Brennan, caused an acknowledgment to be placed on the contract and the same to be recorded. July 31, 1906, defendant duly tendered per-

formance on his part of the contract. Plaintiff did not at any time authorize Brennan to do more than to procure a purchaser for the property, reporting offers to her.

From the facts so found the court held that the written authority obtained by Brennan was secured by fraud and was without force at any time; that it did not give Brennan any authority to make the contract with defendant, and that before it was made Brennan's authority to negotiate with defendant was terminated; that such contract and record thereof constituted a cloud upon plaintiff's title, and that she was therefore entitled to judgment removing such cloud, and for costs. Judgment was entered accordingly.

For the appellant there was a brief by *O'Connor, Schmitz & Wild,* and oral argument by *A. J. Schmitz.*

For the respondent there was a brief signed by *Giffin & Sutherland,* and oral argument by *D. D. Sutherland.*

MARSHALL, J. As we view this case only a small part of the ground covered by the briefs of counsel need be examined, and it is thought best to confine the opinion pretty closely to that which is necessary. A few quite plain features of the case not involving any legal principle of sufficient intricacy to warrant discussion of it seem to be controlling.

Whether the paper obtained by appellant, in form authorizing him to act as respondent's broker in respect to selling her real estate, was secured by false representations, as found, or whether the finding to the effect that it was agreed when the paper was obtained that it should not take effect except in the event of Mr. Potter's approval and that he seasonably disapproved thereof, due notice of such disapproval being given to appellant coupled with a demand for a return of the paper, or whether such paper in any event conferred authority on appellant to make the written contract sought to be annulled, or any written contract binding respondent in respect to selling her property, or whether the evidence in

respect to the circumstances characterizing the signing of the agency contract was properly received and considered, may all be passed without any expression of opinion in respect thereto.

At the best for appellant when he commenced negotiating with Brennan the latter had no authority in the matter other than that contained in the paper obtained as aforesaid, which did not empower him to arrange for a sale of the property at less than $10,000, $3,000 cash and $7,000 payable on or before five years from the date of sale with interest at five per cent. per annum, secured on the property supplemented by insurance thereon, or on such terms as respondent might accept as satisfactory to her. It did not include authority to bind respondent to release any part of the property from the purchase-money mortgage in advance of all of such money being paid, nor to bind respondent to turn over her insurance on the property without special compensation therefor, or to bind her as to any matter of detail not heretofore mentioned, nor were either of three important features of the contract Brennan assumed authority to make with appellant ever submitted to respondent at any time for her approval, nor were they mentioned at any time in any of the negotiations preceding the making of such contract between Brennan and respondent, or between Brennan and respondent's adviser, Mr. Potter. So they were included in the contract, so called, with appellant wholly without authority. Such features were: First, one fixing the time in the future when possession of the property should be delivered to appellant regardless of whether the contract was then otherwise closed up or not; second, one binding respondent to transfer her insurance on the property to the purchaser without compensation therefor; third, one binding respondent, upon appellant selling any part of the property, to accept the sale price therefor as payment on her purchase-money notes and to release such property from the mortgage. This phase of the case appears in the record without any controversy. While it is not wholly

at least specifically covered by the findings, under a familiar
rule it may and ought to be considered in support of the
judgment.

Upon a careful consideration of the matter it is the opin-
ion of the court that the trade made by Brennan in respond-
ent's name must be considered as a whole in respect to all im-
portant provisions of the contract, and that if any such pro-
vision was included therein which was not authorized, es-
pecially if not authorized to the knowledge of appellant, the
whole transaction is void. That seems too clear to require
any extended discussion. If appellant relied on the written
authority with Brennan he must have known that the matters
of detail we have referred to required the special approval
of respondent. If he relied on the assent given by respond-
ent to the unauthorized proposition made by Brennan, which
was afterwards repudiated, he must have known that such
assent did not cover any of the features of the contract re-
ferred to. The conclusion must necessarily follow, in the
opinion of the court, that the contract under which appellant
claims is void and that the judgment, so treating it, is right
irrespective of any other question in the case.

The finding and the uncontroverted evidence are to the
effect that Brennan reported to respondent what he claimed
to be appellant's proposition to buy the property; that she
accepted the same; that subsequently appellant repudiated
the whole matter upon the ground that Brennan had ex-
ceeded his authority; that he then made a proposition to
take the property materially different from the one so re-
pudiated; and that respondent took time to consider the
matter, her decision to be reported to Brennan the next day.
The findings, based upon sufficient evidence, are further to
the effect that seasonably respondent caused Brennan to be
notified that she would not accept appellant's proposition or
further negotiate with him for a sale of the property, or sell
to him on any terms, and that then Brennan, without com-
municating to respondent any new proposition, proceeded

to make the trade complained of with appellant, which, as we have seen, was on a basis materially differing from the one respondent had once assented to. It is the opinion of the court that the consent to trade with appellant according to his supposed proposition, which was found to be unauthorized, did not survive his repudiation thereof. The provision of the written authority claimed by appellant in respect to a sale of the property on terms other than those specifically ·mentioned in the writing upon their receiving respondent's approval, contemplated action on her part upon a proposal by or through Brennan. Assent to an unauthorized proposition not resulting in a trade because of the want of authority did not bind respondent to subsequently assent to a proposition similar in terms from the same or another party.

It is conceded, as we understand it, that if, as the court found, appellant knew when he made the trade with Brennan that the·latter had been notified of respondent's decision not to sell her property to him upon any terms which had been discussed, or otherwise, there is no basis for his claim, but it is insisted that the finding in that regard is not supported by the· evidence. True, there is no direct evidence from the mouth of any witness supporting such finding, while it is contrary to the positive evidence of appellant. Nevertheless we are unable to hold that it is clearly against the preponderance of the evidence, when all of the suggestive circumstances which the court had a right to consider are taken into account, and due weight is given to the opportunity ·such court had, not possessed here, for determining the credibility of appellant's evidence and the truth respecting the controversy. That opportunity, as this court has often said, in terms or effect, is of controlling significance in cases of doubt. The things which may well be of much probative force in the mind of a trial judge, though they cannot be spread upon the record for the enlightenment of an appellate court, may properly be the deciding factor as ·to where the truth of a

controversy lies.   Here there was relationship between Brennan and appellant, the former being the latter's uncle, suggesting a reason for his taking advantage of respondent in appellant's behalf.   There were indications that he was very active in that regard.   He not only assumed to make a trade with appellant after being prohibited from doing so, but he materially varied from the proposition to which respondent once assented and to appellant's advantage.   Some haste was shown in making the written contract, in which appellant and Brennan both participated.   The former acted throughout, as it seems, under Brennan's advice.   These and other circumstances are directly, or circumstantially, shown by the evidence.   In connection therewith there may have been, and probably were, appearances on the trial of a persuasive character which are not open to our view.   Facing the situation as a whole, notwithstanding the absence of direct evidence supporting the court's finding, we are unable to convict the learned judge of having found against the clear preponderance of the evidence as he had a right to view the case.

The foregoing sufficiently supports the judgment complained of to render it unnecessary to say more.

*By the Court.*—The judgment is affirmed.